Edwards, Ch. J.
delivered the following opinion of the court : — The defendant in this' court, who was the *583 complainant in the court below, filed his bill, for the purpose of obtaining a division, and a decree for the possession ofthree-tenths of the slaves of which Joshua Jackson, senior, died possessed, and to which the complainant claimed title, by fair and bona Jide purchases, for a valuable consideration, made either mediately or immediately, from three (out of ten) of the children and dis-tributees of the said deceased.
in a fait for the divihon of flaves the court, upon a proper cafe made put, may order the iheriff to take the flaves into his potfrflion* and hire them out.
The court inay decree a ialc of the flaves, if they cannoe be divided in kind.
In opposition to which claim, one of the defendants, Joshua Jackson, junior, son of Joshua Jackson, deceased, sets up title under a purchase, which he alleges he made from his father, in 1794, in Tennessee, of the negro woman, Hannah, from whom three of the other slaves have since descended : about which period, he alleges, that the negro woman, Hannah, being afflicted with some disease, (supposed to be the effects of poison) his deceased father proposed to his children, that if any of them would take her to a doctor, and have her cured, that in that event, she should belong to whichever of them would do so ; that his children all declined so doing, except the defendant, Joshua, who took her to a doctor, and had her cured. And that she was always afterwards acknowledged by his father, tobe his property. He says he does not recollect how much he paid the doctor ; admits it was a small sum, and alleges it is immaterial whether it cost him much, or whether the doctor favored him, ty making a small charge, on account of his youth and poverty.
The circuit court decreed a division of the slaves, and that the complainant should have allotted to him, three-tenths of the whole of them ; and if the commissioners appointed to make the distribution, should find it impracticable otherwise to allot to the complainant three-tehths, that they should sell so many of them as would enable them to raise for the complainant, three-tenths of the value of the slaves. Commissioners, who were appointed, proceeded to make the division; but their report being excepted to by the defendants/was quashed ; and at the same term, the defendant, Joshua, prayed an appeal to this court; which was granted.
Whereupon, the court, on the application of the complainant, directed the sheriff to take possession of the slaves, and hire them out, subject to the future order of the court. From this order, Jackson prayed an appeal; *584 which'wás refused. He then sued ,oüt a writ Of error; and obtained a supersedeas; and the errors assigned; call in question, as well the merits Of the decree, as the propriety of the order aforesaid.
From the evidence in the cause, it clearly appears» that at the tinte the sale from Joshua, the father, is alleged to have been made to Joshua, the son, he was an infant, living with his father; and that the negro woman, Hannah, ahd her increase; remained in the possession of the father, until his death, about three years after ; and that she afterwards remained in the possession of the widow of Joshua, the father, until some time in 1804 ; after the purchases made by Macey, of the three shares of the slaves, • >
The evidence relating tó the pretended sale, is contradictory, and some of it wholly unworthy of credit; the Witnesses for the defendant, are all of the family; and it doe& not appear that the claim of Joshua, the son, was heard of in the neighborhood, or known out of the family, until after the purchases made by Macey ; and the negative is as strongly proved as a negative is well capable of. The sale is positively sworn to by Williafn Of-fitt, the uncle of Joshua, the defendant; he proves a delivery of the woman, and her increase, afterwards to be bom, immediately after her return from the doctor’s ; and the payment of two dollars to the doctor for her cure. His deposition, however, destroys its own credibility* Heis asked, howhe knew that two dollars was the sum paid the doctor ? He answers, he knew it because he saw the doctor’s account. But, being asked if he can read ; he answers, that he cannot. If he cannot read, how could he know how much was paid the doctor, by seeing his bill? He might as well say he knew it because he saw the doctor’s walking cane. Such a witness ought not to be believed by a court or jury.
Two of the sisters, and one of the brothers of Joshua, the son, swear that they heard their father tell him that if he would take her to the doctor, and have her cured, she should belong to him ; and that he sent her by Jonathan Underwood, and had her cured; but they speak of the proposition, as being made to Joshua Jackson, only, without making any mention of the proposition being made to the children, generally, and accepted by Joshua, as he alleges. The credibility of the brother *585 ⅛ pretty strongly attacked by the other evidence in the Cause.
It is proved in the cause, that Joshua, the son, after Macey’s purchases, when he, Joshua, was about tó táke the negroes home, declared that the contract for Hannah, and her cure, had been made with him by his mother, and not his father ; and that if it had been his father, he Would entertain no doubts about keeping the ne-groes.
The defendant, Joshua’s, assertion, that his title to the negroes, was always acknowledged by his father; in his lifetime, is also disproved.
It appears that about 1804, he went to his mother’s, and told her he wanted what little property he had there ; and that the old Wotttart brought the negroes claimecLby him, out of the kitchen, and delivered them to him in the presence of two witnesses; and then declared they were his property. This is the first time his claim appears to have been known out of the family ; and the transaction bears á very suspicious aspect.
Under all these circiimstánces, (and there are others, not mentioned, for sake of brevity) we are of opinion that the pretended purchase, set up by the said Joshua, the son; Ought to be deemed merely colourable and fraudulent, as to creditors and purchasers.
But it has been said that Macey is rib creditor ; which is true : and that he ought not to be deemed such á purchaser as should be protected* Indeed, it is alleged he is a mere volunteer, claiming Under súme of the dis-tributees, and standing in ho better situation than they did. He is a bona fide purchaser from them, for á valuable consideration; without ndtice ; and this pretended sale is as much a deceit Upon hini, áá if he had purchased from the father.
, It is alleged that he did not purchase from áriy dhe in possession ; and; therefore, it is nó fraüd lipón him; But we are of opinion, that under the circumstances of this case, the possession of the mother Ought to be considered the possession of the distributees* The negroes Were all permitted to remain with her, and it Was impossible to distinguish by how many different means she held them ; and the legal and natural presumption was, that she held them as the property of her late husband, »r of his children.
*586 We are, therefore, of opinion, that there is nó error in the decree of the inferior court, in decreeing to the complainant, three-tenths of the slaves of which Joshua Jackson, senior, died possessed ; or three-tenths of their value, in case a division should be otherwise impracticable.
The order directing the sheriff to take possession of the slaves, and to hire them out until further order, &c. has been said to be an arbitrary and unprecedented proceeding. That it was the exercise of an extraordinary power, which ought not to be resorted to, but for some very cogent reasons, and for the purpose of securing complete justice to be ultimately done between the parties, must be admitted. But we have no doubt the chancellor had such a power, upon a proper case being laid before him ; such as, that the defendant was about running the slaves out of the state, or the like.
Pecree affirmed.